Ivory v. Klein.

54 379
s55 823

MARY IDA IVORY

v.

KATE J. KLEIN, executrix of and trustee under the will of John F. Klein, deceased.

Where there is an estate for life, and a remainder in fee, and there exists an encumbrance, binding the whole estate on the land, and no special equity exists between the life tenant and the remaindermen, the former is bound to pay the interest accruing upon the encumbrance during the continuance of his estate.

On appeal from the decree of the Mercer county orphans court, upon the accounting of the respondent executrix.

John F. Klein, late of Trenton, in this state, died on the 21st of August, 1882, testate, leaving him surviving his widow, Kate J. Klein, and four children—two by a former wife, to wit, Mary Ida Ivory and William F. Klein, the latter of whom died on the 12th of April, 1892, and two by his widow, Kate J. Klein, to wit, Gertrude Klein, at his death nineteen years of age, and Marguerite Klein, then eleven years of age. The last-named child became twenty-one years of age on the 21st of April, 1892.

The decedent left three parcels of property, all of which were in the city of Trenton, to wit, his residence on Hanover street, with its furniture, business property on State street, and other business property on Greene street. His residence was encumbered by a mortgage for $3,000, held by one Deats; the State street property was encumbered by two mortgages, one for $5,000, held by one Wilson, and the other for $3,000, held by one Green, and the Greene street property was encumbered by a

mortgage for $10,000, held by one Wilkinson. He did not leave any personal estate beyond his household furniture in his dwelling on Hanover street.

By his will, dated on the 4th of September, 1875, he constituted his wife the executrix thereof, and gave and devised to her, in lieu of dower, his dwelling on Hanover street, with its furniture, in fee. By the same instrument, he provided that the State street property should be sold by the executrix, as soon as conveniently might be, at public sale, to the highest bidder, " and," following the language of the will,

"that from the proceeds of said sale, all my debts, including all mortgages which may exist on *any and every* property I may own, be paid off and extinguished ; debts, other than mortgages on other properties, to be paid first, and other mortgages afterwards, *if sufficient balance remains for that purpose.* If at the time of such sale any of my mortgages are *not* yet *due, and* the *holder* of said mortgage or mortgages *refuses* to receive the payment thereof, then and in such case, if such balance remain a sum sufficient to pay the probable indebtedness when the same falls due, it shall be retained by my executrix and invested subject to such payment. The balance of the proceeds of said sale, if any, remaining after the payment of *all* my debts, book accounts, mortgages and provisions for payment of mortgages as aforesaid, I give and bequeath to my son, William F. Klein, and my daughter, Mary Ida Ivory, to be equally divided between them."

He then devised the Greene street property to his wife in trust, using this language :

"In trust to the following uses and purposes, that is to say, upon trust to permit and suffer, authorize and empower my wife, Kate J. Klein, to have, take and receive the rents, issues and profits thereof, therefrom to pay for the repairs required on said property and for all public taxes and assessments imposed thereon, and further to meet and pay for the general support and education of herself and *our* children until the youngest surviving child has arrived at the age of twenty-one years, when and at which time, or as soon thereafter as conveniently may be, to sell the said property at public auction to the highest bidder, and I hereby and herein authorize and empower my executrix to make such sale, and to divide the proceeds thereof among *all* my children in such manner and in such parts that, by crediting my said two children before named, William F. Klein and Mary Ida Ivory, with the amount, if any, received by them from the proceeds of the sale of the State street property as directed in Item No. 1, all my children shall receive an equal division and share of the total proceeds of the sales of said two properties (the State street and the Greene street properties aforesaid)."

He further provided for a trust of a $3,400 mortgage held by him when the will was made, but not existing at his death, in his widow for her benefit for life, the principal at her death to be disposed of by her appointment in her will, and that if his son William should die before distribution should be due to him under the will, that his portion should be divided among the children of the testator surviving at that time. The residue of his estate was devised and bequeated to his wife.

The executrix proved the will on the 1st of September, 1882, and letters testamentary were issued to her. She then took possession of the three properties, occupying the Hanover street property and receiving the rents of the State and Greene streets properties. From the rent of the State street property she paid debts of her husband and interest on the four mortgages mentioned. On the 1st of April, 1884, she sold the State street property for $20,000, and on the 17th of the same month paid to Mr. Wilson $5,138.83, and to Mr. Green $3,118.75, in satisfaction of their respective mortgages. These payments, and the payment of the remainder of her husband's unsecured debts, left in her hands from the proceeds of the State street property $5,843.37, out of which, on May 10th, 1884, she paid $3,183.32 in satisfaction of the mortgage on the Hanover street property, the fee of which was devised to her. The remainder of the $5,843.37 she retained and expended in the payment of interest from time to time on the $10,000 mortgage on the Greene street property.

In July, 1892, after her youngest child became of age, she sold the Greene street property, subject to the mortgage on it, and received therefrom, as the proceeds of sale, $15,000, out of which she has been allowed credit for further payment of interest on the $10,000 mortgage.

The income from the Greene street property was used by her in the payment of taxes assessed against that property, for repairs to it and for the support of herself and the support and education of her two children. It was sufficient to have paid for taxes, repairs, interest on the $10,000 mortgage and something towards the support of the widow and her children.

Upon the accounting of the executrix, the orphans court, by its decree, apportioned the $5,843.37, balance of proceeds from the State street property, between the Hanover street and Greene street mortgages, so that three-thirteenths, or $1,348.49 of that sum, was allowed to the executrix because of the Hanover street mortgage, and ten-thirteenths, or $4,494.88, remained for her to account for. No objection is made to the decree in this respect. The appellant's sole objection is because the court allowed the executrix some $5,400 interest upon the mortgage on the Greene street property out of the moneys which were realized from the proceeds of the sale of the State street and Greene street properties, her contention being that the interest upon that mortgage should have been wholly paid from the income of the Greene street property, upon the ground that it was the duty of the life tenants to pay that interest, which is not a charge against the remaindermen, as in effect it is made by the decree of the orphans court.

*Mr. James Buchanan*, for the appellant.

*Mr. Levi T. Hannum*, for the respondent.

THE ORDINARY.

In the case of *Mosley* v. *Marshall, 22 N. Y. 200*, Judge Denio stated the principle which governs the solution of the question presented, in these words: "It is a well-established principle that where there is an estate for life and a remainder in fee, and there exists an encumbrance, binding the whole estate in the land, and no special equities between the remainderman and the tenant for life can be shown, the latter is bound to pay the interest accruing during the continuance of his estate, and the owner of the future estate is to pay off the principal of the lien."

In that case the crucial question was, as it is in the case considered, whether the will evinced an intention that the interest upon the mortgage should not be charged to the life tenants, and thus gave a right against the remaindermen.

In the case considered, testator had two children by his first

wife, both of full age and emancipated from his control and care, and two children by his second wife, both of whom were under age, and yet needed education and his maintenance.

The scheme of the will was that the testator's widow, the mother of his infant, dependent children, should take his dwelling on Hanover street, with its furniture, in fee, in lieu of her dower, and in addition thereto should have the income from his $3,400 mortgage for her life; that the State street property should satisfy his debts, including the mortgages on all his properties; and that the net income of the Greene street property should be devoted to the education and maintenance of his infant children until the youngest should become of age, and, to the end that, through a community of interest, the mother's home and care might be secured for them; she also, during the minority, was to have the benefit of this providence.

The other children had passed their minority, presumably having had his care and assistance. If there should be a surplus in value of the State street property, above the payment of debts, those older children were to take that surplus immediately. When the majority of the youngest surviving child should be reached, that surplus and the proceeds of a sale then to be had of the Greene street property would together be reckoned as a fund for division among the four children, in order to determine how much of the proceeds of the sale of the Greene street property, then in hand to be divided, each would have, the two older children's share being credited with their receipt, if any, from the proceeds of the State street property.

It was the testator's intention to create three funds—one for the payment of his debts, with a possible surplus for his children, one for his widow in lieu of her dower, and a third to yield support and education for his infant children and their mother in care of them, during their minority, and, *in corpus*, be preserved for ultimate division among all his children. He was uncertain as to the sufficiency of the first of these funds. It might be more than enough to pay his debts, and, in that event, he disposed of the surplus of it; yet it might not be enough to pay the debts, and, therefore, he specified a preference of debts to

which it should be applied. But, while he established such preference of debts, he failed to specially provide for the disposition of any balance of the fund there might be after payment of the preferred debts, which might be insufficient to fully satisfy the remaining debts, or to provide how those remaining debts should be satisfied. Passing from this fund and that designed for the widow, he creates the third. He put it in trust for years, specifying three purposes to which its income should be devoted— (a) payment for repairs to the property constituting it; (b) payment of taxes and assessments levied on that property, and (c) the support and education of his wife and infant children. A surplus of income was not contemplated. That he expected to realize enough from the sale of the State street property to pay all his debts is indicated by his provision for the disposition of a balance of proceeds of such sale after their payment. It is true that he also contemplated that the proceeds of such sale might not be sufficient to pay his debts. Such contemplation is evidenced by his preference of debts in such contingency. But that such contemplation was regarded by him as a mere possibility, I think, is clearly demonstrated by his neglect to pursue the event of such contingency by specific direction, either concerning the application of any balance there might be of proceeds of sale after the payment of the preferred debts, or concerning the payment of such debts as should not be satisfied, together with the interest thereon.

Now, it is argued by the respondent that the enumeration in the will of charges upon the income of the Greene street property, for repairs, taxes and assessments, and the support of the widow and younger children, indicate a purpose to exclude any charge upon that income for interest on the mortgage upon that property, or, at least, to postpone it to the full accomplishment of the three purposes expressed. If the will exhibited that the testator had it in mind, that question as to the charge of interest on the mortgage would probably arise, I would, perhaps, because of the importance of specific direction as to the payment of interest, attach greater weight to this argument; but I think that the will evinces that the testator regarded, in the first place, that

the insufficiency of the proceeds of the sale of the State street property to pay all his debts was a possibility only, and, in the second place, that his preferment of the unsecured debts made adequate provision for such contingency by leaving his mortgages a charge upon the properties respectively burdened by them.

In view of the whole situation, I do not perceive more reason for holding that the testator's specification of some charges upon the income of the Greene street property excludes all other charges, than I do for holding that the testator intended in that specification, but failed, to mention all charges that were necessary to fully protect the *corpus*.

It appears to me that his object was to devote the net income of a portion of his estate to the assistance of his second family while such assistance should be most needed, and, at the same time, to preserve the *corpus* for equal distribution among all his children beyond that period, and not to permit a sacrifice of it, and with it a sacrifice of the interests of his elder children, to produce a larger temporary income.

I conclude, therefore, that the will does not signify an intention to give any right to the life tenants which justifies a charge of the interest in question upon the *corpus*.

The decree of the orphans court will be reversed for correction in this particular, otherwise it was rightly made.